CAMDEN COMPANY LIMITED, Respondent-Appellant, v PRINCESS PROPERTIES INTERNATIONAL, LIMITED, et al., Appellants-Respondents.

First Department, April 17, 1975

*Richard W. Lyon* of counsel *(James D. Zirin* with him on the brief; *Breed, Abbott & Morgan,* attorneys), for respondent-appellant.

*John J. Loflin* of counsel *(George R. Reid, II,* with him on the brief; *Lord, Day & Lord,* attorneys), for appellants-respondents.

*Per Curiam.* By a stock purchase agreement dated May 7, 1972, by and between Jorge Flateau (Flateau), Stout-Bilt De Mexico, S.A. de C.V. (Stout-Bilt), International Housing Limited (IHL), Princess Properties International Limited (PPI), Camden Company Limited (Camden), and Desarrollo Monarca, S.A. de C.V. (Monarca), Camden consented to sell to PPI all of the stock of IHL owned by Camden — a total of 10,000 shares, being 50% of all the issued and outstanding capital stock of IHL. Flateau, the sole stockholder of Camden, and PPI agreed to use their best efforts to agree upon the terms of a right of first refusal to purchase the stock of IHL or Camden. Such an agreement was thereafter entered into May 25, 1972, by and between Flateau, Camden, PPI and IHL.

Under the terms of the first refusal agreement (the Agreement), should PPI desire to sell or transfer all or part of the stock of IHL, Flateau should have a right of first refusal upon the same terms and conditions as contained in the offer of purchase made to PPI. It was provided further that Flateau should have five working days from receipt of the offer "to buy the IHL stock on the same terms and conditions contained in the Offer." The sale of IHL stock by Camden to PPI gave PPI 100% ownership of IHL stock.

The issue here involved is whether Camden properly exercised its right of first refusal. In our view it did not.

On or about December 17, 1973, PPI received a firm offer (Taylor offer) to purchase all of the outstanding stock of IHL and related assets for 10 million dollars, payable 1 million dollars at closing, and 9 million dollars by deferred payment obligations extending over and up to a period of 10 years from date of closing. There was also an indenture of guarantee by Norwest, S.A., a corporation with assets of 25 million dollars, which PPI determined provided adequate security for the deferred payments. Norwest also bound itself or any successor party to maintain property and assets to maintain the guarantee. The Taylor offer specified the sale must be closed between January 11 and 18, 1974, and that time was of the essence.

In accordance with its agreement, PPI followed the procedure agreed upon and notified Flateau of the Taylor offer. Flateau had previously made an assignment of rights under the first refusal agreement to Camden. On December 26, 1973, without details or explanation, Camden, by letter, stated an acceptance. PPI sent notices to Camden pointing out defects in Camden's purported acceptance with notice of what it required to meet the offer. The eventual offer from Camden was for 10 million dollars, 1 million dollars cash and 9 million dollars in deferred obligations. The security for such obligations included negotiable notes for $6,430,000 made by 139 Mexican homeowners secured by first liens on their homes in Mexico City, chattel mortgages on architectural forms, etc., a mortgage on a plotted land development, and other forms of collateral which would approximate total assets slightly in excess of $9,254,791. This included Camden's guarantee of the notes executed in the transaction.

After an analysis PPI concluded that the Camden guarantee was supported by resources substantially less than those supporting the Norwest guarantee which was based upon independent assets. PPI concluded as a matter of business judgment that (a) the Camden guarantee was not a reasonable commercial equivalent of that contained in the Taylor offer; (b) that there was not an acceptance by Camden on the same terms and conditions contained in the Taylor offer; and (c) therefore, Camden failed to properly exercise its first refusal option. Camden and Flateau were so notified and the Taylor offer was accepted.

Camden's ex parte temporary restraining order against the

sale was vacated after a hearing, the court concluding that Camden's offer was not upon the same terms and conditions as the Taylor offer. The sale was thereafter consummated.

Plaintiff then commenced this action for a declaratory judgment, to impose a constructive trust upon the IHL stock and for an accounting and damages for breach of contract. After joinder of issue both parties moved for summary judgment. The motions were denied.

Examination of the record persuades us that the Camden offer fell far short of the Taylor offer, and that the Camden guarantee was not a reasonable commercial equivalent of the Norwest guarantee. In light of the extended period of payment of deferred obligations, the guarantee was a significant and valuable part of the offer. Camden's offer was not therefore, upon "the same terms and conditions" as required by the Agreement, and could not serve to bind PPI. Even as to the offer made by Camden, it did not provide proof or evidence to authenticate the claimed valuation or even that the security offered was adequate. Moreover, Camden's contention that the proffered security was adequate does not meet the issue, nor is its claim of bad faith supported by the record. A full examination of Camden's guarantee and offer leaves us no doubt that it is not comparable as a business risk to that of the Norwest guarantee included in the Taylor offer. The margin for depreciation over a ten-year period in the total security offered by Camden included a real possibility of substantial inadequacy as the obligations of payment became due, should the value of the collateral depreciate. There is no ambiguity in the Agreement and accordingly, it is not necessary to speculate upon the intent of the parties.

Order entered September 25, 1974, in the Supreme Court, New York County (FINE, J.), modified on the law and the motion of defendants-appellants (appellants) for summary judgment is granted. As so modified the order is otherwise affirmed, with costs to appellants.

STEVENS, P. J., KUPFERMAN, TILZER, CAPOZZOLI and NUNEZ, JJ., concur.

Order, Supreme Court, New York County, entered on September 25, 1974, unanimously modified, on the law, and the motion of defendants-appellants-respondents for summary judgment dismissing the complaint is granted and, as so modified, the order is otherwise affirmed. Defendants-appel-

lants-respondents shall recover of plaintiff-respondent-appellant $60 costs and disbursements of these appeals.